**Earl J. McDONALD, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. H–93–1143.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 10, 1994.

Larry E. Jacobs, Houston, TX, for plaintiff.

Dinah L. Bundy, Dept. of Justice, Tax Div., Dallas, TX, for defendant.

OPINION ON JUDGMENT

HUGHES, District Judge.

### 1. *Introduction.*

The McDonalds claim a refund from the Internal Revenue Service because the IRS failed to assess the tax within the three-year statute of limitations. While the procedure followed by the IRS and the tax court in resolving this tax dispute was less than ideal, the government did comply with the law in tolling limitations, and the assessment was made on time.

### 2. *Facts.*

The case was tried to the court on a stipulated record, supplemented by briefs. While the inference to be drawn from the facts is hotly disputed, the facts themselves are not.

#### A. *The Hillcrest Investment.*

The McDonalds purchased an interest in the Houston Hillcrest Investment Group in 1982. This partnership was not a "TEFRA" partnership for tax purposes. The McDonalds were two of hundreds of individuals who claimed significant loses from the partnership on their tax returns.

#### B. *The Tax Return.*

The McDonalds filed their 1982 tax return on May 6, 1983, claiming large loses from Hillcrest. The Hillcrest investments became the subject of an IRS audit, and as early as 1984 the IRS started to send statutory notices of deficiencies to investors. The IRS mailed the McDonalds their notice on May 6, 1986, the day before limitations ran.

#### C. *The Tax Court.*

The McDonalds timely filed a petition in the tax court on July 17, 1986. They chose to join with six other unrelated taxpayers whose petitions also involved the Hillcrest audit. By the end of 1987, almost 300 petitions stemming from the Hillcrest audit had been filed in the tax court. On November 13, 1987, the tax court consolidated all the cases. The number of petitions would eventually exceed 800.

#### D. *The Proposed Settlement.*

The IRS proposed a settlement to the Hillcrest taxpayers, which had to be accepted by February 29, 1988. The McDonalds accepted the proposed settlement by letter dated February 29, 1988. Exactly one year later, the IRS sent the McDonalds an unexecuted closing agreement and a stipulation of settlement. The McDonalds signed and returned the documents on July 7, 1989. The IRS executed the closing agreement on September 14, 1989, and the stipulation of settlement on September 20, 1989. The stipulation of settlement was filed with the tax court on September 21, 1989. Both documents waived the restriction on the IRS against assessing a tax while a case pends in the tax court. These provisions are lawful. *See* I.R.C. § 6213(d).

#### E. *The Offer in Compromise.*

At the same time that they executed the closing agreement and stipulation of settlement, the McDonalds also sent an offer in compromise of $20,500 in cash for their 1982 and 1983 tax deficiencies. The offer contained a waiver of the statute of limitation, stating that the statue would be tolled from the time that the offer was made until the IRS had come to a decision on the offer, plus one year from the date of the IRS's decision. The IRS accepted the waiver on August 4, 1989. It rejected the offer on August 3, 1990.

#### F. *The Amended Return.*

The McDonalds filed an amended return on August 20, 1990, for their 1982 tax year. The amended return contained a deduction for the net capital account for the Hillcrest partnership that was not addressed for by

the closing agreement and the stipulation of settlement.

### G. *The Assessment.*

On March 20, 1991, the IRS assessed the McDonalds $48,170 of additional tax and $57,136.70 of interest for 1982 based on the closing agreement and stipulation of settlement. Because of earlier credits paid by the McDonalds, the balance due the IRS was $29,860.31. The McDonalds, after allowing more interest to accrue, fully paid the balance by the end of June, 1992.

### H. *The Claim for Refund.*

On July 29, 1992, the McDonalds filed with the IRS a claim for refund based on the running of limitations. When no refund was forthcoming, the McDonalds filed this suit.

### I. *The Tax Court Again.*

On March 11, 1993, the tax court entered a decision in the consolidated Hillcrest cases which, in part, announced that the deficiency against the McDonalds was assessed and thus there is now no deficiency due from the McDonalds.

### 3. *Limitations and the Tax Code.*

The tax code provides for a three-year statute of limitations from the time the return is filed until the time tax must be assessed. I.R.C. § 6501(a). Once a taxpayer has been sent a notice of deficiency, the running of limitations is tolled for 90 days while the taxpayer decides whether to challenge the deficiency. I.R.C. § 6213(c). The taxpayer does not have to pay the deficiency if she chooses to file a petition with the tax court.

Once a petition is filed with the tax court, the IRS is prohibited from making an assessment unless waived by agreement of the taxpayer. To allow assessments to be made after a decision, the statute of limitations is tolled until a final decision is rendered in the tax court, plus sixty days. I.R.C. § 6503(a)(1).

It is undisputed that the IRS notified the McDonalds of the deficiency on the last possible day, three years after the McDonald's filed their return. The IRS had to make its assessment by the day that the tolling of limitations stopped. When limitations again began to run is the dispute in this case.

### 4. *The Contentions of the IRS.*

The IRS's position is simply stated. Limitations was tolled until a final decision was entered by the tax court, plus sixty days. The assessment was made almost two years before the tax court entered a final decision, within the limitations period.

Alternatively, the IRS asserts that its acceptance of the waiver of limitations contained in the offer of compromise extended limitations for one year after the IRS rejected the offer. That date, August 3, 1991, is after the March 20, 1991, assessment.

### 5. *The Contentions of the McDonalds.*

The McDonalds' position is, by necessity, more complex. They argue that a statutory gap exists that fails to take into account the finality of their contractual settlement with the IRS. In general terms, they assert that the tax code must be read in its entirety to fashion a remedy for the situation where the taxpayer has settled with the IRS, but remains under the jurisdiction of the tax court along with hundreds of other cases that have not settled.

The McDonalds argue that it is unfair to allow the IRS unlimited time to assess a tax after a final settlement is reached merely because the tax court is slow in ministerially approving the deal. They specifically assert that because the tax court never reached a *decision* on their case but merely ratified what was done in settlement, the statute of limitations must begin to run once the documents of settlement were executed. Alternatively, they contend that the filing of the stipulation of settlement constitutes a final decision of the tax court for purposes of the date of decision of the tax court. *See* I.R.C. § 7459(c).

As for the IRS's alternative argument, the McDonalds question the applicability of the one-year extension of tolling contained in the offer to compromise, and they point out that,

in any event, the offer of compromise was constructively rejected on the date that the IRS executed the closing agreement and the stipulation of settlement (September 20, 1989), which was wholly inconsistent with the offer. One year from that date falls before the IRS assessed the tax.

### 6. *The Offer of Compromise.*

■ Taking the alternative argument first, the court finds that: The one-year extension of the waiver in the offer of compromise applied to offers that the IRS rejects, but the IRS effectively rejected the offer when it agreed to the settlement.

While the current form used for an offer of compromise states that the one-year extension of the waiver of limitations applies only when the offer is accepted, the form used by the McDonalds had no such limitation. Paragraph six of the form waives limitations for the "period during which this offer is pending ... and for 1 year thereafter." The language is clear.

The McDonalds made the IRS two competing offers at the same time. They accepted the IRS's offer of settlement through the closing agreement and the stipulation of settlement and sent the IRS their own offer of compromise. Because of the previous payments made by the McDonalds, the practical difference between the two was only approximately $5,000, with the IRS receiving more money from their own proposed settlement.

Why the IRS took almost a year after accepting their own proposed settlement to expressly reject the offer in compromise is only one of the unexplainable delays that have justifiably angered the McDonalds. Although frustrating, it is irrelevant to this discussion, because the acceptance of one settlement operated to reject the other. So the one-year extension of the waiver in the offer of compromise is properly dated from the IRS's execution of the stipulation of settlement. The waiver did not extend the tolling of the statute of limitations resulting from the existence of the offer in compromise, which was up to the assessment date.

### 7. *The IRS Code.*

■ The provisions about the statute of limitations are clear; there is no statutory gap. While it may be unfair that the IRS receives the benefit of tax court jurisdiction tolling the statute even after it has come to a full settlement with the taxpayer, that is how the law is written. The same rule applies in Article III courts; you remain a party until the court acts by entering a final judgment on the whole case or one for the specific party, which requires a finding. The tax court's procedures for dealing with over 800 petitions in one case were inefficient at least, but it is undisputed that the taxpayers could have moved the tax court to sever its case to more quickly obtain a final decision. This they chose not to do.

The McDonalds argue that a valid settlement of a deficiency in a TEFRA partnership eliminates the tax court's subject matter jurisdiction. *See Treaty Pines Inv. Partnership v. Commissioner*, 967 F.2d 206 (5th Cir. 1992). The law for TEFRA partnerships is different than the applicable law in this case, and those provisions that end the tax court's jurisdiction have no counterparts for the partnership here.

### 8. *Tax Court Decisions.*

■ The McDonalds' contention that their settlement acted as a decision of the tax court for limitations purposes also fails. As the closing agreement was not filed with the tax court, the only document that could have been a "decision" of the tax court was the stipulation of settlement. No decision was entered by the tax court until the court itself makes that decision, even if all the disputes are resolved by the parties. *See DeLucia v. Commissioner*, 87 T.C. 804 (1986). Furthermore, the stipulation of settlement itself recognized that a final decision could only be made by the tax court, where it stated that the "final decision to be submitted may differ from this agreement to reflect assessments, abatements, ...."

As important, orders made by the tax court in the Hillcrest litigation specifically stated the court's awareness of the number of settlements that had been reached, and warned the taxpayers that their liability was

not finally settled "until the Court executes decision documents." October 5, 1988, Notice to All Interested Parties, signed by Judge Drennen.

The McDonalds assert that the final decision made by the tax court did not even mention the amount of the settlement, and stated that the deficiency had been paid. This is appropriate because the deficiency had been paid. There is nothing in the tax code to indicate that the deficiency could not be paid before a final decision is rendered, as long as the taxpayer waives his right to stop the IRS from assessing. Thus the amount of the deficiency at the time of the decision, nothing, was correctly noted. *See* I.R.C. § 7459(c).

### 9. *Conclusion.*

Taxpayers may benefit if the government fails to assess deficiencies on time, but they may not argue that the IRS has an unfair advantage when it is playing by the rules. The tax court's dilatory handling of the settled petitions gave the IRS the legal cover to assess at leisure. The McDonalds are not entitled to a refund.